PETITION FOR A RE-HEARING.
This court seem to predicate their opinion in this case, upon the ground, that the allegations of the bill are not sufficient to open the door for the admission of the parol proof exhibited by Woodford-.
The bill states, that the plaintiffs in error, as the administrators of Jacob Fishback, deceased, sold at auction, the personal estate of the decedent, in October, 1821; that the defendant in error purchased property at the sale, to the amount of $101 12i, for which he executed his note with security, ata credit of twelve months; that before he bid for the property,.he understood from one of the administrators, and the public declarations of the crier, that the property was to be sold for commonwealth’s bank paper; in consequence of which, he bid the highest paper prices for the property he bought; that at the time of the sale commonwealth paper was at a depreciation of 50 per cent, and 100 when the note became due; that his note was executed t#inadvertently” for dollars, without specifying that it was for commonwealth’s papery that Jesse Fish? back, one of the administrators, knew that he understood the sale to be for bank paper, and if such were not the terms of the sale, he wrongfully permitted him to labor under the mistake; that the administrators had recovered judgment at law for $101 12¿, the amount of the notes, and were threatning to coerce from him the amount thereof in silver.
The administrators', in their answer, admit, that the note was given for the property which defendant purchased at their sale; that they had obtained judgment at law for the amount of the note, and wished to coerce payment in silver; that commonwealth’s paper was at the depreciation alleged; but they deny, that the sale was for commonwealth’s paper, or that the crier or either of the administrators, made such representations to the defendant. They allege that the property sold fora fair price in silver; that they took the note for dollars, by which they meant dollars of the current coin of the United States, and that the note was. *90 drawn and executed, according to the contract of sale, and the intention of the parties.
Petition for a re-hearing.
The bill and answer, substantially present to the consideration of the chancellor, the question whether the plaintiffs in error had or had not, through fraud or mistake, obtained from the defendant in error, a note materially different from the contract between the parties, or a note for double the amount he was to pay by his agreement. This is all that is required, according to the opinions of the most enlightened chancellors of England, or this country.
in Simpson vs. Vaughn, 2 Atkins, 32, the bill charges, “that (he bond, which was intended to be a joint and several one, was filled up by Baker, one of the obligors; that, omitting “severally bound,” was done by him fraudulently, or through ignorance and mistake,” and that it should be decreed a joint and several bond, according to the intention of the parties. Lord Hardwicke heard parol proof and granted relief.
Joynes vs. Statham, 3 Atkins, 388, was a bill for the specific execution of a lease. The defendant insisted in his answer, that it ought to have been inserted in the agreement, that the tenant should pay the rent clear of taxes; that the plaintiff, having written the agreement himself, had omitted to insert that provision, and offered parol proof, to shew that this was part of the agreement. Lord Hardwicke received the evidence, and refused a decree for specific execution.
In South Sea company vs. D’Oliff, cited in Pitcairn vs. Ogbourne, 2 Ves. Sen. 377, Sir John Strange says: “The company, by agreement, was not bound to answer for any irregularity by supercargoes, unless information was given in two months after return home. The instrument was not drawn up until on board the ship, and in a great hurry, and executed there by the party, who, when he got out to sea and read it over, found it was six months instead of two, and brought bis bill to be relieved against the variation in the instrument. Lord King admitted parol proof, on the ground, that it would be a fraud in the party, to avail himself of the variance between the agreement and the writing, declaring that parol proof must be admitted, to shew the variation between the writing and the *91 true agreement; “otherwise, if it could be gbt into black and white, there would be no relief.”
Petition for a re-hearing.
in Washburn vs. Merrills, 1 Day’s Rep. 139, the bill states, that the complainant, being indebted to the defendant in the sum of £162 15s., executed his note therefor, to him; and also, a deed for fifty acres of land, as collateral security; that this deed was intended as a mortgage, but through mistake and accident, was drawn and executed as an absolute deed; that the mistake was not discovered until some time after the deed was delivered^ and prayed that the complainant might be allowed to redeem, upon payment of the debt and interest. Parol proof was admitted, to shew that it was a mortgage, as intended by the parties, and a decree permitting redemption upon paying the £162 15s., with interest.
In the case of Gillespie vs. Moon, 2 Johnson’s Chancery Cases, 586, which was a bill brought to correct a mistake in a deed of 250 acre's of land, to obtain a re-conveyance and possession of fifty acres, and an account for the rents and profits thereof, the only allegation of fraud or mistake, is stated by Chancellor Kent, in the. following language: “That the description and bounds in the deed to the defendant, were copied literally from the description in the former deed, except as to the number of acres-, and through mistake or frauds was made to comprise within the bounds, the whole 250 acres conveyed to Mrs. Mann, and including the fifty acres leased to Cable, and which were not intended to be included.” Most of the material allegations of the bill were denied in answer. Parol evidence was offered, to shew the variance between the deed and the agreement of the parties, under the head of mistake. Its admission was zealously opposed by counsel, who cited many authorities in support of the position they assumed. But Chancellor Kent, after an able review of all the cases in the English Chancery, admitted the parol proof, and granted the relief.
In Gartin and wife vs. Chandler, 2 Bibb, 240, the bill alleged, that the drawer of the note made a mistake in the manner of writing ft. By virtue of this allegation, as to the mistake, the court of appeals admitted the parol proof; but refused relief, because the *92 evidence was not sufficient to overcome the denial in the answer.
Petition for a re leariug.
the case of Inskoe vs. Proctor, decided at the pa]i terrrii 1827, the bill charges, that the contract was ^ the sale of a tract of land at $600, to be paid in. paper of the bank of the commonwealth, then depreciated to about two dollars in paper for one in silver; that William B. Lerty was called upon to draw the writings, and, by mistake or accident, or not knowing that it was necessary to insert i» the notes, that they were payable in paper of the bank of the commonwealth, he drew them for dollars, omitting to say what kind of money. This is the only allegation in the bill, as to mistake, at the execution of the writings. The answer denies most of the material allegations in the bill. The court of appeals admitted the psefbl 'proof, and granted relief.
None of the many eminent chancellors, who have had-this subject under consideration, have refused parol evidence, because the allegations in the bill were insufficient. The questions, which they have so ably and learnedly discussed, are, whether the parol proof could be admitted to contradict the answer, and was sufficient to satisfy the mind of the chancellor, as to the existence of the mistake, or rather, variance, by mistake or accident, between the writing and the true agreement of the parties.. They seem to have been satisfied with the allegations of the bill,' in all cases where the variance has been alleged to have taken place, through mistake and accident, or through fraud or mistake.
In the case of the King against Horne, which was a writ of error in the House of Lords, to a judgment of the court of King’s Bench, upon an information for a libel, Lord Chief Justice De Gray, delivered to the House of Lords, the unanimous opinion of the twelve Judges, in the following language: “The charge must contain such a description of the crime, that the defendant may know what crime it is, which he is called upon to answer; that the jury may appear to be warranted in their conclusion of‘guilty’ or ‘not guilty,’ upon the premises delivered; and that the court may see such a definite crime, that they may apply the punishment which the la.w prescribes.” “Whatever *93 circumstances are necessary to constitute the crime imputed, must be set out; and all beyond are surplus-age.” His Lordship further said: “The true rule to go by, is laid down by my Lord King, in the case of Rex vs. Mathews, which is this: ‘That the court and jury must understand the record, as the rest of mankind do.’n
Petition for a re-hearing.
Let the record in this case, be tested by these principles, and we feel Confident, that this court will say, it contains enough to justify the decree of the court below. • The record clearly shews, that the plaintiff in error, obtained from the defendant, a note for double the amount he had agreed to give for the property, by taking his note for dollars, instead of bank paper dollars; and that the note was procured in this form, by the fraud of the plaintiffs, and the “inadvertence” 02-mistake of the defendant. Take the bill and answer together, and no other construction can be put upon the record, by chancellors, lawyers, or “the rest of mankind.” Justice and policy, equally forbid the establishment of a rule, which will confine the parties, in their allegations and proofs, to the time and place of executing the writings. The temple of chancery should have its doors wide open, for‘the admission of proof, to shew flraud or mistake. It is not material, whether the witnesses were in the room where the writings were executed, or in an adjoining room, or in the streets, or the open fields. If they heard the •agreement, or the admissions of either party, as to the terms of the agreement, their evidence should be received. The only‘enquiry should be, whether by accident, mistake or fraud, there is a substantial variance, .between the writing and the agreement of the parties.
But if the parties are to be confined to the time and place of the execution of the writings, they will be denied relief in ninety-nine, cases out of one hundred. It will be vain and useless for them to proceed, under the direction of learned and experienced counsel. Their proof cannot correspond with the allegations of their bill. They confided in the person with whom they contracted. He reduced the contract to writing; they read and signed it, without the interchange of a word, as to the terms of the agreement.
rehearing*1 &
Such a doctrine would roll back the whole current of authorities in the English-and American chancery, from the time of Lord Hardwicke until the present But if we should be mistaken in their view case’ ^ believed that the mandate of'the court is incorrect. This court should have sent the case back to the court below, for proper parties, &c. and upon failure of the defendant in-error, to comply with the rule of the court below, on that subject, that his bill should be dismissed without prejudice. See 3 Bibb, 111, 284; 4 Bibb, 26, 187, 239, 267-8, 257-8, 543-4,; 1 Marshall, 556; 2 Marshall, 501-2; 5 Littell, 18, 19, 34, 42, 48 and 135.
A re-hearing of the cause is, therefore, respectfully asked by the counsel, for the defendant in error..
Petition for a r.e-hearing overruled..